**AHTNA TENE NENÉ, Appellant,**

v.

**STATE of Alaska, DEPARTMENT OF FISH & GAME, Kenneth Manning, and Alaska Fish & Wildlife Conservation Fund, Appellees.**

**Ahtna Tene Nené, Appellant,**

v.

**State of Alaska, Department of Fish & Game, Kenneth Manning, and Alaska Fish & Wildlife Conservation Fund, Appellees.**

**Nos. S–13968, S–14297.**

Supreme Court of Alaska.

Nov. 9, 2012.

---

John M. Sky Starkey, Anchorage, for Appellant.

Michael C. Kramer, Borgeson & Kramer, P.C., Fairbanks, for Appellee Alaska Fish & Wildlife Conservation Fund.

No appearances for other Appellees.

Before: CARPENETI, Chief Justice, FABE, WINFREE, and STOWERS, Justices.

## OPINION

CARPENETI, Chief Justice.

## I. INTRODUCTION

Before 2009 the Alaska Board of Game employed a controversial scoring system in order to distribute permits to subsistence hunters in a popular caribou and moose hunting area between Anchorage and Fairbanks. In 2009, the Board amended its regulations to abolish the scoring system and replace it with two separate subsistence hunts: a community harvest hunt for groups and a separate hunt for individuals. A local tribe was subsequently granted a community harvest permit pursuant to the new rules. An individual resident brought suit challenging the new system, alleging violations of the Alaska Administrative Procedure Act, his due process rights, the Board's governing statutes, and several provisions of the Alaska Constitution. The tribe intervened on the side of the State and a private organization intervened on the side of the individual. In July 2010, the superior court granted summary judgment and enjoined the community harvest hunt as unconstitutional. The superior court later awarded attorney's fees to the individual and private organization.

The tribe appeals both decisions, which we have consolidated for consideration. We conclude that the underlying appeal is moot because the challenged regulation has been substantively changed since 2009; because we decline to reach the merits of these claims, this appeal is dismissed. Accordingly, we vacate the attorney's fee award granted to the private organization as it stands against the tribe, but otherwise leave it undisturbed. We vacate the grant of attorney's fees to the individual as he is not an attorney and such an award was improper.

## II. FACTS AND PROCEEDINGS

The Ahtna people have hunted caribou and moose for centuries in Alaska, primarily in a region surrounded by Anchorage, Fairbanks, and the Matanuska–Susitna Valley. This case involves a roughly 23,000 square-mile stretch of land called the Nelchina basin, known as Game Management Unit 13. Due to the area's popularity with local Native hunters and other Alaska residents from throughout the state, the Board has struggled to find a coherent, workable regulatory policy that satisfies Alaska's subsistence law.[1] After the subsistence law was modified in 1992, the entire harvestable surplus of the Nelchina caribou and bull moose herds was allocated to subsistence uses and designated as a Tier II hunt. The criteria considered under the Tier II system were (1) "the customary and direct dependence on the game population by the subsistence user for human consumption as a mainstay of livelihood," and (2) "the ability of the subsistence user to obtain food if subsistence use is restricted or eliminated."[2] This system was controversial and the Board frequently received complaints about inequality, unfairness, and false applications. The local tribe, Ahtna Tene Nené (Ahtna) claimed that under this system it could not obtain enough permits to meet its people's subsistence needs. It also argued that the system discriminated against members with higher incomes and that it prevented young people from obtaining permits, keeping the tribe from passing down its long-standing hunting traditions and way of life. In 2006, the Board of Game conducted a series of investigations in response to the many complaints it received about its Tier II system.

The Board found that under the current system hunting permits had shifted from the most dependent local residents to less subsistence-dependent urban residents. After applying the criteria of the Joint Boards of Fisheries and Game,[3] the Board found that the current policy did not adequately accommodate customary and traditional subsistence uses.[4] Based on a proposal from eight

1. See AS 16.05.258 & .330.

2. 5 Alaska Administrative Code (AAC) 92.062(a) (2009); see also State, Dep't of Fish & Game v. Manning, 161 P.3d 1215, 1217 (Alaska 2007).

3. See 5 AAC 99.010(b) (2009).

4. See Findings for Caribou and Moose Subsistence Uses in Game Management Unit 13, Findings No.2006–170–BOG.

Ahtna villages, the Board abolished the Tier II system and established a new Tier I system consisting of two hunts: a community hunt and an individual hunt. The community hunt allowed any village, community, group, or individual to apply for a caribou community harvest permit as long as it met the necessary requirements and had a designated hunt administrator.[5] Each member included in the caribou community harvest permit would be granted one harvest ticket each year. A similar moose community harvest program was also established. The other hunt, open to all individual Alaskan residents, consisted of a lottery-type drawing system that limited each family to one caribou harvest ticket every four years. Ahtna was subsequently granted a community harvest permit for the designated community hunt area specified in its application.

In March 2009, Kenneth Manning challenged the new Tier I system put in place by the Board. In April 2009, Ahtna moved to intervene and answered the complaint. The Alaska Fish & Wildlife Conservation Fund (AFWCF) then moved to intervene and filed its own complaint. Manning then filed a motion for preliminary injunction and AFWCF filed a memorandum in partial support. The superior court denied the request for preliminary injunction against the community harvest permit issued to Ahtna in June 2009, but found that Manning had raised "serious and substantial questions" about whether the community hunt was unconstitutionally residency-based. Thus, the court severed the community residency requirement and ordered the implementation of a sharing opportunity for non-locals.

In July 2009, AFWCF filed a motion for summary judgment and in August Manning filed a motion for declaratory relief under the public trust doctrine. The court found that the State and Ahtna were substantially in compliance with its earlier order and allowed the hunt to proceed given the modified community harvest permit and secondary Tier I system. The State and Ahtna filed cross motions for summary judgment at the end of August 2009. Oral argument was heard on the summary judgment motions in January 2010. In July 2010, the superior court granted summary judgment for Manning and AFWCF and enjoined the Ahtna community harvest permit as unconstitutional, concluding that it was fundamentally a residency-based permit and an impermissible delegation of authority under the public trust doctrine. The superior court also concluded that the public notice of the changes noted above was insufficient under the Administrative Procedure Act and that the Board decision to change the caribou hunt from a Tier II to Tier I hunt was arbitrary and unreasonable. The court either declined to reach or rejected the other challenges to the regulations brought by Manning and AFWCF.

Ahtna and the State both moved for stays of the decision and the superior court entered final judgment on July 22, 2010. On July 26, 2010, the State and AFWCF filed a stipulation acknowledging that the time necessary to revert back to the Tier II system would cause hunters to miss the prime hunting season and asked for the Tier I non-communal hunt to proceed as planned with an allowance for Ahtna community hunters that had intended to hunt under the community harvest permit. On July 28, 2010, the superior court denied the stay requested by Ahtna, but accepted the State–AFWCF stipulation for a partial, temporary stay. On that same day, the Board met to adopt emergency regulations in response to the superior court's order. On August 5, 2010, Ahtna filed an appeal with this court and an emergency motion for stay of judgment.[6] We denied the stay on August 11, 2010.

The Board amended its system for caribou permits in October 2010 in response to the superior court's grant of summary judgment to AFWCF and Manning. The first amendment adopted by the Board added express language stating that the application for any community harvest permit was open to any group of 25 or more Alaskans that wished to harvest as a community, regardless of resi-

---

5. See 5 AAC 92.072(c) (2009).

6. Neither the State nor Manning submitted briefs in this appeal.

dency.[7] The second amendment changed the individual Tier I hunt so that any individual or household that participated in that hunt would be awarded a permit every year it applies, instead of once every four years.[8] These regulations were not yet final at the time this appeal was filed, but became effective in 2011.[9]

The superior court also awarded attorney's fees to AFWCF and Manning, a pro se litigant who held a law degree but not a bar license. The superior court issued judgment for costs holding the State and Ahtna jointly and severally liable for payment of $5,000 to both Manning and AFWCF, and later issued another judgment for costs holding the State and Ahtna jointly and severally liable for payment of $5,000 to AFWCF. Ahtna appealed these judgments, arguing that (1) the superior court erred by awarding fees to Manning, a pro se non-attorney litigant; and (2) if this court overturned the superior court on appeal, the fee award should be remanded because Manning and AFWCF would no longer be the prevailing parties.

We heard oral argument in the substantive appeal, case number S–13968, in September 2011. Shortly afterward, we issued an order requesting supplemental briefing regarding mootness. Both parties submitted briefs asking us to review the underlying substantive claims presented.

## III. STANDARD OF REVIEW

■ "We resolve issues of standing and mootness using our independent judgment because, as matters of judicial policy, these are questions of law."[10]

■ Whether the court applied the proper legal analysis in awarding attorney's fees is a question of law that we review de novo.[11]

## IV. DISCUSSION

### A. This Appeal Is Moot.

■ "We refrain from deciding questions where the facts have rendered the legal issues moot."[12] A claim is moot if it "has lost its character as a present, live controversy."[13] A controversy is a claim that affects the legal rights of a party; it is "definite and concrete . . . admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."[14] "[A] case is moot if the party bringing the action would not be entitled to any relief even if it prevails."[15] Issuing a decision regarding regulations that are no longer in effect is merely an academic exercise; it provides no explanation of a party's rights under the existing law.

■ We have previously recognized that we must be especially careful while reviewing requests for a declaratory judgment because those cases may easily become advisory opinions if the controversy is moot.[16] New or amended regulations may present unique factual situations that do not result in the same disagreement between the parties. By issuing a declaratory judgment on former versions of amended regulations, the court assumes that the dispute has remained the same. This assumption may not be true. "Even in a declaratory judgment case . . . where the rights or obligations of parties are delineated by the court, courts should avoid becoming involved in premature adjudication

---

7. ˉ 5 AAC 92.072(c)(1) (2012).

8. 5 AAC 92.071 (2012).

9. See 5 AAC 92.071–.074, history.

10. Ulmer v. Alaska Rest. & Beverage Ass'n (ARBA), 33 P.3d 773, 776 (Alaska 2001).

11. Weimer v. Cont'l Car & Truck, 237 P.3d 610, 613 (Alaska 2010) (footnotes omitted).

12. Ulmer, 33 P.3d at 776 (quoting O'Callaghan v. State, 920 P.2d 1387, 1388 (Alaska 1996)) (internal grammatical marks omitted).

13. Kleven v. Yukon–Koyukuk Sch. Dist., 853 P.2d 518, 523 (Alaska 1993) (citing United States v. Geophysical Corp. of Alaska, 732 F.2d 693, 698 (9th Cir.1984)). .

14. Kodiak Seafood Processors Ass'n v. State, 900 P.2d 1191, 1195 (Alaska 1995) (emphasis added) (quoting Jefferson v. Asplund, 458 P.2d 995, 999 (Alaska 1969)).

15. Ulmer, 33 P.3d at 776 (quoting O'Callaghan, 920 P.2d at 1388) (internal quotation omitted).

16. Id.

of disputes that are uncertain to occur."[17] If a regulation is amended, the case may become moot if the specific relief that the parties seek is no longer available.

Here, the parties principally sought declaratory relief regarding the Board's 2009 regulation. Manning brought his suit for declaratory and injunctive relief challenging the Board's regulation and alleging violations of the Alaska Administrative Procedure Act, his due process rights, the Board's governing statutes, and several provisions of the Alaska Constitution. In July 2010, the superior court granted summary judgment for Manning and AFWCF and enjoined the community harvest permit as unconstitutional. On appeal, Ahtna argued that (1) the community harvest permit granted to Ahtna was not fundamentally a local-residency based permit; (2) the Board acted within its authority in issuing the community harvest permit, thereby providing different hunting opportunities based on different patterns of subsistence use; and (3) the administrative responsibilities of the hunt administrator through the community harvest permit did not constitute an illegal delegation of statutory authority. AFWCF disputed Ahtna's arguments and maintained that the system granted preferential harvest opportunities to community harvest permit participants based on residency and distinguished between Tier I participants in violation of the Alaska Constitution.

The Board amended the challenged regulation in October 2010. The first amendment adopted by the Board added express language stating that the application for any community harvest permit was open to any group of 25 or more Alaskans that wished to harvest as a community, regardless of residency.[18] This amendment clarified that eligibility for a community harvest permit was not dependent on residency. The second amendment changed the individual Tier I hunt so that any individual or household that participated in that hunt would be awarded a permit every year that the individual or household applies, instead of once every four years.[19] This amendment addressed the challenge to substantially different hunting opportunities. As noted above, these new regulations became effective on July 1, 2011.[20]

■ This appeal is moot because the regulation that Manning and AFWCF originally challenged is no longer in effect. Moreover, the core issues of their dispute have been addressed by the adopted changes. Thus, there is no live controversy for the court to decide and the relief sought by these parties is no longer available through court intervention.[21] AFWCF now asks for a broad declaration that the subsistence statutes and entire permitting scheme are unconstitutional, but those claims are not properly raised by the facts of this case. We have long held that challenges to administrative permitting decisions based on rules that are no longer valid are moot, despite the fact that permit opponents seek declaratory judgments that the agency actions were unlawful.[22]

---

17. *Id.*

18. *See* 5 AAC 92.072(c)(1).

19. *See* 5 AAC 92.071.

20. *See* 5 AAC 92.071–.072, history.

21. *See Peninsula Mktg. Ass'n v. State,* 817 P.2d 917, 919–20 (Alaska 1991) (validity of chum cap moot in light of amendment raising cap; since no claim for damages incurred as a result of the cap, we declined to "speculate as to whether injunctive relief would be proper in a similar situation in the future"); *see also Ulmer,* 33 P.3d at 776 (initiative no longer in effect; even if state prevailed on appeal, no relief could be granted).

22. *See Mullins v. Local Boundary Comm'n,* 226 P.3d 1012, 1017 & n. 12 (Alaska 2010) (election vote against incorporation mooted petitioner's appeal of the board's decision to grant the petition to put it on the ballot in the first place) (citing *Akpik v. State, Office of Mgmt. & Budget,* 115 P.3d 532, 534–35 (Alaska 2005) (challenge to agency's decision not to accept comments on proposed exploratory drilling project and to approve project was moot where project was completed and project permits had expired); *State, Dep't of Natural Res. v. Greenpeace Inc.,* 96 P.3d 1056, 1068 (Alaska 2004) (challenge to agency's decision to lift stay on issuance of permit was moot where permit had expired); *Kodiak Seafood Processors Ass'n v. State,* 900 P.2d 1191, 1195–96 (Alaska 1995) (challenge to agency's decision to issue exploratory permit was moot where permit was revoked before trial, but considering merits under public interest exception)).

██ Even where an appeal is moot, we retain the discretion to address an issue.[23] Our inquiry in such a case focuses on whether any exception to the mootness doctrine applies to the appeal.[24] We turn now to that question.

### 1. The public interest exception to the mootness doctrine does not apply.

██ We will hear moot cases if they fall under the public interest exception.

The public interest exception requires the consideration of three main factors: (1) whether the disputed issues are capable of repetition, (2) whether the mootness doctrine, if applied, may cause review of the issues to be repeatedly circumvented, and (3) whether the issues presented are so important to the public interest as to justify overriding the mootness doctrine.[25]

However, "we have refused to apply the public interest exception to unusual factual circumstances that were unlikely to repeat themselves or situations where the applicable statute or regulation was no longer in force." [26]

Both Ahtna and AFWCF argue that the public interest exception applies here and ask us to address the substantive merits and underlying constitutional claims presented. Ahtna contends that (1) the constitutionality of a separate community harvest permit system with different hunting opportunities for the two hunts is the source of ongoing litigation between the parties and is capable of repetition, as demonstrated by subsequent lawsuits challenging the amended versions of these regulations; (2) this issue is likely to circumvent review since the Board's regulations are frequently changed, especially those related to controversial hunts; and (3) deciding these issues is in the public interest because a ruling in this case would legitimize the community subsistence hunt system and lend some finality to the issue.

AFWCF similarly argues that this case falls within the public interest exception. AFWCF claims that (1) the disputed issues do not rely on the now moot 2009 regulations, but actually focus on the legitimacy of the community hunt enabling statute, AS 16.05.330(c), and related regulations that provide different hunting opportunities and allocations for different groups of Tier I subsistence users, issues which have not been resolved by subsequent amendments to the regulations; (2) these issues will continue to evade review because the Board can make minor adjustments to "replace previous unconstitutional regulations with new regulations that must be continually challenged in separate lawsuits"; and (3) these issues are clearly in the public interest because they affect "thousands of Alaskan hunters" that must "wage an expensive fight for equality."

██ These arguments are misguided because they ignore the relief initially sought in this appeal and instead make broad requests for premature declaratory judgments regarding the constitutionality of the community harvest system as a whole unrelated to any factual dispute. The requested relief in this case was initially very narrow: Manning's initial complaint sought to invalidate the current regulations, those specifically adopted in 2009, not the system as a whole. Ahtna's arguments on appeal were similarly limited to these regulations: Ahtna sought a declaration that the community harvest permit it was granted was not fundamentally a local-residency based permit, that the Board acted within its authority in issuing that specific permit, and that the administrative responsibilities of the hunt administrator did not constitute an illegal delegation of statutory authority. These issues are not capable of repetition as this regulation is no longer in force and the subsequent amended versions are substantially different from the disputed 2009 versions: The amended regulation clarifies that any group of 25 or more individuals

---

**23.** *Hayes v. Charney,* 693 P.2d 831, 834 (Alaska 1985) ("Ultimately, the determination whether to review a moot question is left to the discretion of the court."); *see also Fairbanks Fire Fighters Ass'n, Local 1324 v. City of Fairbanks,* 48 P.3d 1165, 1168 (Alaska 2002); *Taylor v. Gill St. Invs.,* 743 P.2d 345, 347 (Alaska 1987).

**24.** *Mullins,* 226 P.3d at 1015.

**25.** *Ulmer,* 33 P.3d at 777–78.

**26.** *Akpik,* 115 P.3d at 535 (quoting *Fairbanks Fire Fighters Ass'n,* 48 P.3d at 1168).

may apply for a community harvest permit, not only residents of a certain area, and it changed the hunting opportunities so that all subsistence hunters were subject to substantially similar terms.[27]

The mootness doctrine will not cause review of any issue to be circumvented, as subsequent appeals may address the constitutionality of the current hunting opportunities available to those Tier I users that choose to participate in a communal or individual hunt. And the validity of the old regulations, including the focus on their alleged dependence on residency, is irrelevant to the current statutory scheme. Any opinion issued on the validity of the 2009 regulations would be merely advisory and, as AFWCF acknowledges, "[s]uch a ruling would do little to advance the ultimate resolution of this ongoing dispute." The "ongoing dispute" about the constitutionality of the community harvest system does not center on the claims raised in this appeal, which were related to whether this specific permit was constitutional. We decline to make broad declarations of law that ignore the facts of the case in front of us.[28] This is particularly true when the State is not participating in the appeal. Ahtna and AFWCF seek review of issues that are certainly germane to the public interest, but those issues are simply not ripe for adjudication in this case.

27. *Compare* 5 AAC 92.072 (2009, Register 190), *with* 5 AAC 92.072 (2011, Register 198). *Also note changes in* 5 AAC 85.025 & .045.

28. *See Harrod v. State, Dep't of Revenue,* 255 P.3d 991, 1002 (Alaska 2011) ("Standing is a rule of judicial self-restraint based on the principle that courts should not resolve abstract questions or issue advisory opinions." (quoting *Law Project for Psychiatric Rights, Inc. v. State,* 239 P.3d 1252, 1255 (Alaska 2010))); *see also Larson v. State,* 254 P.3d 1073, 1078 (Alaska 2011) (noting that petitioner sought "declaratory judgment without an active controversy to place it in context," which supported dismissal because "[c]ourts do not lightly issue advisory opinions").

29. *Gold Country Estates Pres. Grp., Inc. v. Fairbanks N. Star Borough,* 270 P.3d 787, 794–95 (Alaska 2012) (quoting *Smallwood v. Cent. Peninsula Gen. Hosp., Inc.,* 227 P.3d 457, 461 (Alaska 2010)).

## 2. The issue of attorney's fees does not warrant consideration of the underlying merits of this case.

We will hear an otherwise moot case if it is necessary to determine the prevailing party for the purpose of attorney's fees.[29] We will review a case for that purpose only if it has some substantive issues remaining and the lower court actually made an award of attorney's fees.[30] However, we do not have to reach the merits of an otherwise moot case where no substantive issues remain merely because of the possibility that a losing party might prevail and thus would be entitled to an award of attorney's fees from the superior court after appeal.[31]

Ahtna did not receive an award of attorney's fees below so it cannot now argue that we must reach the merits of an otherwise moot appeal based solely on the possibility that it may be entitled to a fee award if it prevails. A prevailing party has already been determined and the Board amended the challenged regulations. As we discuss below, the award of attorney's fees to Manning was improper so the only fees still in dispute are those awarded to AFWCF. The State did not appeal the superior court's grant of attorney's fees so it remains liable for the judgment of costs awarded to AFWCF. Since this fee award is based on joint and several liability, appellate review will not affect that award so it is unnecessary for us to decide the merits of this case solely for purposes of attorney's fees.[32] Thus, we vacate the judg-

30. *Ulmer,* 33 P.3d at 777; *Hickel v. Se. Conference,* 868 P.2d 919, 928 n. 11 (Alaska 1994); *Lamoureaux v. Totem Ocean Trailer Exp., Inc.,* 651 P.2d 839, 840 n. 1 (Alaska 1982).

31. *See Ulmer,* 33 P.3d at 777 (holding that consideration of a moot case was not required when "there was no award of attorney's fees that would be affected by appellate review and the issue has not been preserved for appeal").

32. *See Hickel,* 868 P.2d at 928 n. 11 (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 442, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)) (internal quotation marks omitted):

Although we continue to generally support [the notion that otherwise moot claims may be heard in order to determine the prevailing party for purposes of attorney's fees, we caution attorneys not to read this line of cases] as an invitation to losing defendants to engage in

ment of costs against Ahtna, but leave the judgment of costs against the State undisturbed.

## B. The Grant Of Attorney's Fees To Manning Was Improper.

Alaska Civil Rule 82 allows prevailing parties in civil litigation to recover a portion of their attorney's fees. Alaska Statute 09.60.010 allows public interest litigants to recover full fees if they prevail on their claim. Manning was awarded fees under the latter rule after the superior court found he met "the 'claimaint' standards of AS 09.60.010(c) because he prevailed on constitutional grounds on one or more issues in the case." But Alaska law makes clear that pro se litigants may not recover attorney's fees under Rule 82; this bar applies to public interest litigants as well.[33] The superior court explained that "[t]he questions surrounding *pro se* litigant[s'] entitlement to fee awards as attorneys versus lay individuals are the same under Civil Rule 82 as they are under AS 09.60.010." Thus, the analysis of who is entitled to fees is identical under either provision. We explained the reason for this differential treatment in *Alaska Federal Savings & Loan Ass'n of Juneau v. Bernhardt,*[34] where we considered the policy reasons for and against such fee awards for non-attorney litigants and ultimately held that pro se litigants could not collect fee awards. These reasons include:

(1) the difficulty in valuing the non-attorney's time spent performing legal services, i.e., the problem of over compensating pro se litigants for excessive hours spent thrashing about on uncomplicated matters; (2) the danger of encouraging frivolous filings by lay pro se litigants and creating a 'cottage industry' for non-lawyers; (3) our view that the express language of Civil Rule 82 specifying "attorneys fees" is not easily susceptible to a construction allowing awards to non-attorneys; and (4) the argument that, in cases where a litigant incurs no actual fees, the award amounts to a penalty to the losing party and a windfall to the prevailing one.[35]

And pro se litigants do not generally record or bill for specific tasks they perform during litigation. Thus, it is nearly impossible for a court to review these tasks and determine whether the time spent and amount billed is appropriate.

Moreover, we suggested our concern that non-lawyers may try to use recovery of attorney's fees to subvert the stringent requirements of bar membership.[36] As noted above, the plain language of Rule 82 precludes recovery by non-attorneys because " '[a]ttorney's fees' presupposes attorney representation." [37] Lastly, our rule considers the motivation for allowing plaintiffs to recover fees in the first place: The general purpose behind Rule 82 and similar provisions is principally to compensate litigants for the expense of hiring attorneys, which may otherwise be so onerous that it would deter the litigant from bringing suit. "The purpose of Rule 82 attorney's fees is to compensate litigants for fees they incur through legal representation, not to compensate litigants for the economic detriment of litigating." [38]

Pro se litigants who are also attorneys may recover fees when they are successful, but they can only do so for time

---

... one of the least socially productive types of litigation imaginable: appeals from awards of attorney's fees, after the merits of a case have been concluded, when the appeals are not likely to affect the amount of the final fee.

33. *See Maloney v. Progressive Specialty Ins. Co.,* 99 P.3d 565, 568 (Alaska 2004) ("Our cases uniformly hold that unrepresented litigants have no right to recover attorney's fees under Rule 82 (unless they are attorneys themselves)."); *J.L.P. v. V.L.A.,* 30 P.3d 590, 599 (Alaska 2001) ("[O]ur law is clear that lay pro se litigants cannot recover attorney's fees.") (internal quotation marks omitted).

34. 794 P.2d 579 (Alaska 1990).

35. *Id.* at 581 (internal citations and quotation omitted); *see also Juelfs v. Gough,* 41 P.3d 593, 598–99 & n. 26 (Alaska 2002).

36. *Id.* (referring to danger of "creating a 'cottage industry' for non-lawyers").

37. *Bernhardt,* 794 P.2d at 581.

38. *Shearer v. Mundt,* 36 P.3d 1196, 1198–99 (Alaska 2001).

spent acting as an attorney in the litigation, not for time expended as a client.[39] We have previously explained the rationale for why attorney and non-attorney pro se litigants are treated differently:

> The rule permitting the recovery of attorney fees by *pro se* attorney litigants is well founded. An attorney has expended considerable time and effort in obtaining the skills necessary to practice law. Whether those skills are directed to the representation of others or oneself, the attorney skills and time have a clear marketable value. None of the policy reasons given in *Bernhardt* to deny lay *pro se* litigants attorney fees are applicable to attorneys who represent themselves.[40]

Unlike lay pro se litigants, a court can value the time of attorney pro se litigants. Moreover, the policy reasons that justify denying fees to lay pro se litigants do not similarly apply to attorney pro se litigants so attorneys representing themselves are allowed to recover fees.

The superior court concluded that "[b]ecause Manning has a law degree but is not a member of the Alaska Bar Association, his legal status is somewhere between the case law authorizing fee awards to *lawyer pro se* litigants and the case law preclusion of fee awards to *lay pro se* litigants." The superior court acknowledged that only one consideration justifying fee awards for attorney pro se litigants applies here; principally that Manning "invested the time, effort, and expense to obtain a law degree." The superior court also noted that Manning is not admitted to practice law in this state and "[i]n that sense his legal skills and time do not have a clear marketable value" so it would be difficult to value Manning's time. Despite these reservations, the superior court concluded that fees "should be awarded to a law-school-graduate, non-attorney-*pro-se* claimant, at an appropriate reduced hourly rate, for legal work on the issues on which the claimant prevailed."

The question whether a non-attorney pro se litigant with a law degree may recover attorney's fees is a question of law we review de novo. We disagree with the superior court's analysis of the law: Manning is not somewhere between attorney and non-attorney. Because he has not passed the bar, he is not an attorney.[41] Thus, he must be treated like any other non-attorney pro se litigant. As such, he may not recover fees.

A law school graduate is not an attorney and the policy rationales for denying fees for lay pro se litigants apply equally to Manning. As Ahtna emphasized, "[t]he lower court's finding that Manning is a law school graduate does not qualify him to practice law in Alaska, nor does it have any bearing on whether he is entitled to an award of attorney's fees." Although Manning did not file a brief in this appeal, his main argument below was that with his law degree, he is a "non-Bar attorney" who is entitled to costs and fees. Alaska Civil Rule 81(a) defines persons who may practice law in Alaska as (1) members of the Alaska Bar Association and (2) other attorneys, defined as "[a] member in good standing of the bar of a court of the United States."[42] This rule does not allow unsupervised law school graduates that have not been admitted to the bar the right to practice. Alaska Statute 08.08.230 makes it a misdemeanor for one to pretend to be an attorney, a member of the Alaska Bar Association, or a person licensed to practice law in Alaska. Law school graduates may be convicted under this statute if they are not licensed to practice law even though they may have the skills and knowledge to be admitted to the bar if they chose to apply.

Moreover, the policy rationales for denying fee awards to lay pro se litigants apply equally to law school graduates who are not licensed to practice. As the superior court

**39.** *See Sherry v. Sherry*, 622 P.2d 960, 966 (Alaska 1981); *Burrell v. Hanger*, 650 P.2d 386, 387 (Alaska 1982) (extending *Sherry*'s holding to Rule 82 fees).

**40.** *Pratt & Whitney Canada, Inc. v. Sheehan*, 852 P.2d 1173, 1181 (Alaska 1993) (quoting superior court opinion).

**41.** Alaska Civil Rule 81(a).

**42.** *See also* AS 08.08.210.

noted, it is hard to value the non-attorney's time spent performing true legal services. Second, allowing law school graduates to recover fees is a slippery slope, even more likely to lead to a "cottage industry" for individuals who do not wish to engage in the study or expense of being admitted to and maintaining membership in a bar association. The superior court noted:

> [Manning] does not pay bar dues …, is not subject to the Alaska Rules of Professional Conduct, is not subject to the Alaska Bar Rules, does not maintain a year round legal staff … or law office …, does not carry legal malpractice insurance, does not have an IOLTA account, does not provide pro bono services to the indigent, is not available for Administrative Rule 12 legal assignments, and does not serve on discipline, fee arbitration, or other committees or volunteer programs within the Alaska Bar Association.

Allowing Manning to reap the benefits of being a lawyer, including the ability to recover fees, without taking on the obligations and responsibilities of being a lawyer is fundamentally unfair. A law school graduate is a non-attorney; thus, the plain language of these rules and statutes prohibit the award of fees. As we reiterated in *Shearer v. Mundt*,[43] "attorney and non-attorney pro se litigants are not similarly situated [because] [a]ttorneys' representational services have a 'clear marketable value.' "[44] Unlike licensed attorneys, Manning's representational services have no clear marketable value so awarding him fees would amount to a windfall. Manning would not be able to represent anyone other than himself in an Alaskan court, just like any other lay pro se litigant. Thus, he is barred from recovering attorney's fees. We vacate the superior court's fee award as it was incorrect as a matter of law.

## V. CONCLUSION

Because this case is moot and we decline to reach the merits of the underlying claims, the appeal on the merits is DISMISSED. We VACATE the award of attorney's fees as levied against Ahtna, but otherwise leave the grant of attorney's fees to AFWCF undisturbed. We VACATE the award of attorney's fees to Manning as it was erroneous as a matter of law.

CHRISTEN, Justice, not participating.

---

43. 36 P.3d 1196, 1199 (Alaska 2001).

44. *Id.; see also Sheehan,* 852 P.2d at 1181.