*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| ERIC FORRER, | ) | |
| | ) | Supreme Court No. S-18752 |
| Appellant, | ) | |
| | ) | Superior Court No. 4BE-22-00324 CI |
| v. | ) | |
| | ) | O P I N I O N |
| STATE OF ALASKA, DEPARTMENT | ) | |
| OF FISH & GAME, BOARD OF | ) | No. 7791 – October 10, 2025 |
| FISHERIES; DOUGLAS VINCENT- | ) | |
| LANG, Commissioner of the Alaska | ) | |
| Department of Fish & Game; and | ) | |
| MICHAEL J. DUNLEAVY, in an | ) | |
| official capacity as Governor of the | ) | |
| State of Alaska, | ) | |
| | ) | |
| Appellees. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Fourth Judicial District, Bethel, Nathaniel Peters, Judge.

Appearances: Joseph W. Geldhof, Law Office of Joseph W. Geldhof, Juneau, for Appellant. Aaron C. Peterson and Noah I. Star, Assistant Attorneys General, Anchorage, and Treg Taylor, Attorney General, Juneau, for Appellees.

Before: Maassen, Chief Justice, and Carney, Borghesan, Henderson, and Pate, Justices.

BORGHESAN, Justice.

## I.    INTRODUCTION

A longtime Alaska resident sued the State, alleging that the steep declines in chinook and chum salmon populations in the Yukon and Kuskokwim Rivers since statehood were the result of the State's failure to manage the fish according to the sustained yield principle, as required by the Alaska Constitution. He sought a declaration that the State has been unconstitutionally managing the fisheries for decades "as demonstrated by the failure of mandatory sustained yield policies and outcomes." He also sought injunctive relief "to fulfill the sustained yield mandate" for management of those fish populations. But he did not challenge any specific policy, regulation, or action by the State. The superior court ruled the claims were nonjusticiable and dismissed the suit for failure to state a claim on which relief can be granted.

We affirm the superior court's ruling that the resident failed to state a justiciable claim. The claims for injunctive relief are political questions that would require judges to make fisheries policy in the first instance despite lacking the institutional competence to do so. And the claim for declaratory relief would not, even if granted, settle or clarify legal relations between the parties and is therefore not justiciable.

## II.    FACTS AND PROCEEDINGS

Eric Forrer is a longtime Alaska resident with a history of personal-use and commercial fishing, including on the Yukon River. In September 2022 Forrer sued the Alaska Department of Fish and Game (ADF&G) and the ADF&G Commissioner in his official capacity (we refer to the defendants collectively as "the State").[1] Forrer alleged that the State's management of the chinook and chum salmon fisheries in the Yukon and Kuskokwim rivers violated the sustained yield clause of the Alaska Constitution, which states: "Fish, forests, wildlife, grasslands, and all other

---

[1]    In an amended complaint, Forrer added Governor Michael J. Dunleavy and the Board of Fisheries (Board) as defendants.

replenishable resources belonging to the State shall be utilized, developed, and maintained on the sustained yield principle, subject to preferences among beneficial uses."[2]

According to Forrer's complaint, the chinook and chum salmon populations returning to the Kuskokwim and Yukon rivers have severely and noticeably diminished since Alaska achieved statehood.[3] Forrer alleged that the State's management of these fish "illustrate[d] a failure to adhere to the constitutional directive regarding sustained yield." The complaint referred generally to mining activities in the Kuskokwim and Yukon river drainages, "industrial scale capture of pelagic fish species," "water pollution issues" accelerated by increased human habitation in these watersheds, and the State's "failure to incorporate" indigenous knowledge and history in its calculations or regulatory decisions. Overall, Forrer alleged that since statehood, the State "has not utilized, developed, and maintained the Chinook and Chum salmon runs in the Yukon and Kuskokwim Rivers . . . according to the sustained yield principle mandated by the Alaska Constitution."

Forrer requested four types of relief. First, he requested declaratory relief "recognizing, and informing the defendants, that the State of Alaska has been and continues to engage in unconstitutional management of the Yukon and Kuskokwim River Chinook and Chum salmon fisheries, and has done so for decades as demonstrated by the failure of mandatory sustained yield policies and outcomes." Second, Forrer requested entry of a "mutually agreeable consent decree" designed to

---

[2] Alaska Const. art. VIII, § 4.

[3] Because this is an appeal of an order dismissing the complaint for failure to state a claim, we assume the facts alleged in Forrer's complaint are true. *Robinson v. Alaska Hous. Fin. Corp.*, 442 P.3d 763, 768 (Alaska 2019) ("In reviewing a Rule 12(b)(6) dismissal, we liberally construe the complaint and treat all factual allegations in the complaint as true." (quoting *Patterson v. Walker*, 429 P.3d 829, 831 (Alaska 2018))).

manage salmon "in a manner consistent with the Alaska Constitution." Third, he requested "[i]njunctive relief . . . designed to fulfill the sustained yield mandate for the management and maintenance of the Kuskokwim and Yukon River Chinook and Chum salmon as required by Article VIII, Section 4 of the Alaska Constitution." Fourth, Forrer requested attorney's fees associated with "maintaining this public interest lawsuit."

The State moved to dismiss Forrer's suit under Alaska Civil Rule 12(b)(6) for failure to state a claim. The superior court granted the motion on three grounds. First, the court determined that the complaint presented nonjusticiable political questions committed to the legislature's authority, not the judiciary's. Second, the court determined that Forrer's complaint did not present an actual controversy as he did not identify a concrete injury to himself or the general public. According to the court, no injury was shown because Forrer did not identify specific policies or actions that led to reduced salmon runs and thus failed to plausibly connect the State's actions to the population declines. Third, the court determined that deference to agency expertise on fisheries policy required dismissal when the complaint did not challenge any specific policy or action.

Forrer appeals the dismissal of his lawsuit.

## III. STANDARD OF REVIEW

We review the grant of a motion to dismiss de novo.[4] In doing so we construe the "complaint liberally and accept as true all factual allegations," and we generally do "not consider materials outside the complaint and its attachments."[5] " '[M]otions to dismiss are disfavored,' and it must be 'beyond doubt that the plaintiff can prove no set of facts that would entitle [the plaintiff] to relief' before dismissal will

---

[4]     *Sagoonick v. State*, 503 P.3d 777, 791 (Alaska 2022).

[5]     *Id.* (quoting *Pedersen v. Blythe*, 292 P.3d 182, 184 (Alaska 2012)).

be granted."[6]  "[W]e review de novo the question of whether a case should be dismissed on prudential grounds."[7]

## IV.  DISCUSSION

Forrer's complaint alleges that the State has failed to adhere to the sustained yield principle by mismanaging the chinook and chum salmon populations in the Yukon and Kuskokwim Rivers over the six decades since statehood.  His allegations regarding the State's failure to adhere to its article VIII responsibilities raise justiciability concerns similar to claims we examined in *Kanuk ex rel. Kanuk v. State, Department of Natural Resources*[8] and *Sagoonick v. State*.[9]  Based on the reasoning in these cases, we affirm the dismissal of Forrer's complaint.  Because Forrer's claims for injunctive relief raise political questions unsuitable for judicial resolution, and his claim for declaratory relief does not present an actual controversy, these claims are not justiciable.

### A.  Judicial Review Of The State's Management Of Natural Resources Under Article VIII Is Deferential.

"When an executive agency decision about natural resources is challenged under article VIII, our role . . . is limited to ensuring that the agency has 'taken a "hard look" at all factors material and relevant to the public interest.' "[10]  Specifically, we "ensure that the agency 'has given reasoned discretion to all the material facts and

---

**6**        *Id.* (alterations in original) (first quoting *Adkins v. Stansel*, 204 P.3d 1031, 1033 (Alaska 2009); and then quoting *Catholic Bishop of N. Alaska v. Does 1-6*, 141 P.3d 719, 722 (Alaska 2006)).

**7**        *Kanuk ex rel. Kanuk v. State, Dep't of Nat. Res.*, 335 P.3d 1088, 1092 (Alaska 2014).

**8**        335 P.3d 1088.

**9**        503 P.3d 777.

**10**        *Id.* at 788 (quoting *Sullivan v. Resisting Env't Destruction on Indigenous Lands* (*REDOIL*), 311 P.3d 625, 635 (Alaska 2013)).

issues' " by taking a hard look at the salient problems and engaging in reasoned decision-making.[11]

Our "hard look" approach to cases implicating "the proper balance between development and environmental concerns derived from a recognition that we cannot, and should not, substitute our judgment for that of the political branches."[12] This review is deferential to agency decision-making,[13] which means that we must focus on a specific decision or decisions made by the agency.

These principles apply equally to claims based on the sustained yield clause because application of the sustained yield principle entails a substantial amount of agency expertise and discretion.[14] " '[T]he sustained yield clause does not require . . . a specific level of yield for each fish stock' and 'does not mandate the use of a predetermined formula, quantitative or qualitative.' "[15] Rather, it requires "conscious application insofar as practicable of principles of management intended to sustain the yield of the resource being managed."[16] Therefore, our review must focus on specific actions taken by the State to determine whether the necessary principles have been applied.

With these points in mind, we turn to Forrer's claims.

---

[11] *REDOIL*, 311 P.3d at 635 n.46 (quoting *Se. Alaska Conservation Council, Inc. v. State*, 665 P.2d 544, 549 (Alaska 1983)).

[12] *Sagoonick*, 503 P.3d at 795.

[13] *See Kachemak Bay Conservation Soc'y v. State, Dep't of Nat. Res.*, 6 P.3d 270, 275 (Alaska 2000).

[14] *See Native Vill. of Elim v. State*, 990 P.2d 1, 7-9 (Alaska 1999) (indicating Board's "considerable discretion in developing a sustained yield policy").

[15] *Sitka Tribe of Alaska v. Alaska Dep't of Fish & Game*, 540 P.3d 893, 900 (Alaska 2023) (quoting *Native Vill. of Elim*, 990 P.2d at 7-8).

[16] *Id.* (quoting *Papers of the Alaska Constitutional Convention, 1955-56*, Folder 210, Terms).

## B. Forrer's Claims For Injunctive Relief Are Not Justiciable.

The superior court did not err by dismissing Forrer's claims for injunctive relief because they present nonjusticiable political questions concerning the appropriate policies for managing Alaska's fisheries according to the sustained yield principle.[17]

As a threshold matter, we reiterate that the remedy a litigant seeks is a "relevant consideration in the political question analysis."[18] We clarified this point in *Sagoonick* when the plaintiffs, "rather than contemporaneously challenging proposed agency action," "[c]ategoriz[ed] past State actions as a single energy policy 'implemented through [the State's] historical and ongoing affirmative aggregate and systemic actions' " and sought an injunction against this "policy."[19] Forrer has taken a similar approach. Without citing any specific state actions, and based on allegations that the decline of two fish populations in two rivers over six decades demonstrates that the State violated the sustained yield principle, he seeks an injunction "designed to fulfill the sustained yield mandate." Although Forrer argues that whether and how to afford equitable relief is outside of the scope of this appeal, we can and do consider the injunction Forrer seeks as we analyze the justiciability of his claim. As in *Sagoonick*, "[t]o the extent our focus on the requested relief could be considered unusual, it is in keeping with the nature of plaintiff['s] argument."[20]

---

[17] We review de novo the legal question of whether the political question doctrine applies. *See Kanuk ex rel. Kanuk v. State, Dep't of Nat. Res.*, 335 P.3d 1088, 1097 (Alaska 2014) (applying de novo review to determine whether superior court correctly dismissed claims as nonjusticiable political questions).

[18] *Sagoonick v. State*, 503 P.3d 777, 794 (Alaska 2022).

[19] *Id.* at 794-95.

[20] *Id.* at 795. We similarly considered the requested relief in *Kanuk*. 335 P.3d at 1096-1103 (analyzing justiciability of plaintiffs' injunctive relief and declaratory relief claims under political question doctrine).

The separation of powers doctrine prohibits Alaska courts from reviewing nonjusticiable political questions.[21] A claim is not justiciable if "deciding the claim would require us to answer questions that are better directed to the legislative or executive branches of government."[22] We use the test announced by the United States Supreme Court in *Baker v. Carr* to determine when the political question doctrine applies.[23] Under this test, at least one of the following factors will be found "prominent on the surface" of a case involving a political question:

> [1] a textually demonstrable constitutional commitment of the issue to a coordinate political department; or [2] a lack of judicially discoverable and manageable standards for resolving it; or [3] the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or [4] the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or [5] an unusual need for unquestioning adherence to a political decision already made; or [6] the potentiality of embarrassment from multifarious pronouncements by various departments on one question.[24]

A claim for injunctive relief presents a nonjusticiable political question under the third *Baker* factor — "the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion"[25] — if it requires a court to "make a policy judgement of a legislative nature."[26] Such was the case in *Kanuk*. There

---

[21] *Kanuk*, 335 P.3d at 1096.

[22] *Id.*

[23] *Id.* (citing *Baker v. Carr*, 369 U.S. 186 (1962)).

[24] *Id.* (quoting *Baker*, 369 U.S. at 217).

[25] *Id.*

[26] *Id.* at 1097-99 (noting third *Baker* factor "is implicated 'when, to resolve a dispute, the court must make a policy judgment of a legislative nature, rather than resolving the dispute through legal and factual analysis' " (quoting *Equal Emp. Opportunity Comm'n v. Peabody W. Coal Co.*, 400 F.3d 774, 784 (9th Cir. 2005))).

the plaintiffs asked a superior court to order the State to reduce carbon dioxide emissions by a certain percent each year and to annually account for the State's emissions.[27] These claims were nonjusticiable political questions because a court could not say that "an executive or legislative body that weighs the benefits and detriments to the public and then opts for an approach that differs . . . would be wrong as a matter of law" and because we could not impose "our own judicially created scientific standards."[28] "The limited institutional role of the judiciary supports a conclusion that the science- and policy-based inquiry [at issue was] better reserved for executive-branch agencies or the legislature."[29]

Similarly, in *Sagoonick*, we held that we could not grant a remedy that involved more than "striking down a specific statute or regulation or reversing an agency's specific decision" because doing so would "establish constitutional common law controlling State policy about the appropriate balancing of resource development against environmental protection."[30] The plaintiffs had requested injunctive relief requiring the State to take specific actions to account for and reduce carbon emissions in addition to requiring the State to "stop implementing its statutory energy policy in violation of [plaintiffs'] constitutional rights."[31] We observed that article VIII, section 2, of the Alaska Constitution directs the legislature, and not the judiciary, to "provide for the utilization, development, and conservation of all natural resources belonging to the State, including land and waters, for the maximum benefit of its people."[32] Accordingly, the plaintiffs' claims presented nonjusticiable political questions because

---

[27]  *Id.* at 1097.

[28]  *Id.* at 1098.

[29]  *Id.* at 1099.

[30]  *Sagoonick v. State*, 503 P.3d 777, 796 (Alaska 2022).

[31]  *Id.* at 793.

[32]  *Id.* at 795.

they asked the court to make "legislative-like policy choices [about resource development] that in *Kanuk* we said courts could not make."[33]

As in *Kanuk* and *Sagoonick*, Forrer's claims for injunctive relief request "an initial policy determination of a kind clearly for nonjudicial discretion."[34]  Forrer seeks injunctive relief "designed to fulfill the sustained yield mandate for the management and maintenance of the Kuskokwim and Yukon River Chinook and Chum salmon as required by Article VIII, Section 4 of the Alaska Constitution" and entry of a consent decree to manage salmon "in a manner consistent with the Alaska Constitution."  Delegates to Alaska's constitutional convention incorporated the sustained yield principle into article VIII "to promote 'a harmonious balance between consumption, preservation, and expansion of natural resources.' "[35]  Forrer's complaint generally attributes the decline of the chinook and chum salmon to mining activities, overfishing, water pollution, and the State's failure to incorporate indigenous knowledge in management decisions.  By inviting the judiciary to order a different balance between conservation and development, Forrer's claims for injunctive relief request the same kind of initial judicial policy decision that we deemed nonjusticiable in *Kanuk* and *Sagoonick*.[36]  As in those cases, "[t]he underlying policy choices are not ours to make in the first instance."[37]

Forrer argues that by confining his claims to two species of fish in two rivers, he has pled a claim with sufficient specificity to survive a motion to dismiss.

---

[33]     *Id.* at 797.

[34]     *Baker v. Carr*, 369 U.S. 186, 217 (1962).

[35]     *Sagoonick*, 503 P.3d at 783 (quoting VICTOR FISCHER, ALASKA'S CONSTITUTIONAL CONVENTION 130 (1975)).

[36]     *See Kanuk ex rel. Kanuk v. State, Dep't of Nat. Res.*, 335 P.3d 1088, 1097-99 (Alaska 2014); *Sagoonick*, 503 P.3d at 796.

[37]     *Kanuk*, 335 P.3d at 1097-99.

Our decision in *Cook Inlet Fisherman's Fund v. State, Department of Fish & Game* indicates otherwise.[38]  In that case a group representing commercial fishing interests sought an injunction requiring the Commissioner to extend the fishery hours and to compel ADF&G "to adhere to its own regulations" by following the Board's management plans.[39]  The superior court denied the injunction, and we affirmed for three reasons.  First, the group "fail[ed] to cite any specific management plan provision [ADF&G] violated."[40]  Second, "an injunction simply requiring [ADF&G] 'to obey the law' lacks the specificity required to convey what management actions it could take without risking contempt."[41]  Third, "issuing such an injunction would potentially put Alaska's court system in the untenable position of managing one of Alaska's most crowded and contentious fisheries, despite our long-standing policy of not second-guessing [ADF&G's] management decisions based on its specialized knowledge and expertise."[42]

Forrer's requested injunctive relief suffers from the same flaws.  The asserted boundaries of Forrer's claim to relief — two species of fish in two rivers and a general reference to state-permitted activity in the watersheds over the course of six decades — do not make it justiciable.  Just as the group in *Cook Inlet Fisherman's Fund* failed to assert a specific violation by ADF&G, Forrer failed to cite specific fishery management decisions, actions, or policies that give rise to his sustained yield claim. So an injunction requiring the State to comply with the sustained yield clause without identifying a specific violation would not "convey what management actions [the State]

---

[38]    357 P.3d 789, 804 (Alaska 2015).

[39]    *Id.* at 792, 795, 803 (internal quotation marks omitted).

[40]    *Id.* at 804.

[41]    *Id.*

[42]    *Id.*

could take without risking contempt."[43]  And as in *Cook Inlet Fisherman's Fund*, the requested injunction and consent decree would place the judiciary in the untenable position of initially balancing competing priorities and managing the fish populations at issue.[44]  We have held that courts "lack the scientific, economic, and technological resources an agency can utilize," are "confined by [the] record," and "may not commission scientific studies or convene groups of experts for advice, or issue rules under notice-and-comment procedures."[45]  As was true in *Cook Inlet Fisherman's Fund*, judicial management of the fisheries at issue would be contrary to constitutional design and practically untenable.

For these reasons, the superior court did not err by dismissing Forrer's claims for injunctive relief.

## C.    Forrer's Claim For Declaratory Relief Is Not Justiciable.

Forrer requested "declaratory relief recognizing, and informing the defendants, that the State of Alaska has been and continues to engage in unconstitutional management of the Yukon and Kuskokwim River Chinook and Chum salmon fisheries, and has done so for decades as demonstrated by the failure of mandatory sustained yield policies and outcomes."  Because this declaration would not clarify and settle legal relations between the parties, the court properly dismissed the claim.

"The Alaska Declaratory Judgment Act gives superior courts 'the power to issue declaratory judgments in cases of actual controversy.' "[46]  The controversy

---

**43**    *Id.*

**44**    *See id.*

**45**    *See Kanuk ex rel. Kanuk v. State, Dep't of Nat. Res.*, 335 P.3d 1088, 1099 (Alaska 2014) (quoting *Am. Elec. Power Co. v. Connecticut*, 564 U.S. 410, 428 (2011)) (internal quotation marks omitted).

**46**    *Id.* at 1100 (first citing AS 22.10.020(g); and then quoting *Brause v. State, Dep't of Health & Soc. Servs., Bureau of Vital Stat.*, 21 P.3d 357, 358 (Alaska 2001)).

presented in a claim must be "real and substantial" and must permit "specific relief through a decree of a conclusive character as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."[47]

Claims for declaratory relief may be dismissed if they do not present an actual controversy.[48] "Prudential concerns often caution against issuing declaratory relief."[49] "A court that 'know[s] at the commencement of litigation that it will exercise its broad statutory discretion to decline declaratory relief[]' need not undertake a 'wasteful expenditure of judicial resources' " to hear the case on the merits first.[50] Because "declaratory judgments are rendered to clarify and settle legal relations, and to terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding," "[a] court should decline to render declaratory relief when neither of these results can be accomplished."[51]

We have twice affirmed dismissal of claims for declaratory relief similar to Forrer's because they would not clarify and settle legal relations. We previously considered whether declaratory relief was proper in light of prudential considerations in *Kanuk*[52] and *Sagoonick*.[53] In both cases we affirmed dismissal of claims for injunctive relief based on the political question doctrine, then held that related claims

---

[47] *Sagoonick v. State*, 503 P.3d 777, 799-800 (Alaska 2022).

[48] *Id.* at 799 (holding generally that claim must present actual controversy that is definite and concrete).

[49] *Id.* at 800 (citing *Kanuk*, 335 P.3d at 1101). "[W]e review de novo the question of whether a case should be dismissed on prudential grounds." *Kanuk*, 335 P.3d at 1092.

[50] *Kanuk*, 335 P.3d at 1101 (alterations in original) (quoting *Lowell v. Hayes*, 117 P.3d 745, 756 (Alaska 2005)).

[51] *Id.* (alteration in original) (quoting *Lowell*, 117 P.3d at 755) (internal quotation marks omitted).

[52] *Id.* at 1100-03.

[53] 503 P.3d at 800-02.

for declaratory relief were properly dismissed because they would not advance the goal of settling the legal relations at issue.[54] For the same reason, we hold that Forrer's claim for declaratory relief was properly dismissed.

In *Kanuk* we affirmed dismissal of claims requesting declarations "that (1) the atmosphere is a public trust resource under article VIII; (2) the State therefore has an affirmative fiduciary obligation to protect and preserve it; (3) the State's duty is enforceable by citizen beneficiaries . . . ; and (4) . . . the State has failed to uphold its fiduciary obligation."[55] After dismissing the plaintiffs' claims for injunctive relief, we determined that the remaining issue was "whether the plaintiffs' claims for declaratory judgment — absent the prospect of any concrete relief — still present[ed] an 'actual controversy' that [was] appropriate for our determination."[56] We reasoned that declaring the atmosphere to be subject to the public trust doctrine would not settle the legal relations at issue because declaratory relief: (1) "would have no immediate impact on greenhouse gas emissions in Alaska"; (2) "would not compel the State to take any particular action"; (3) would not "protect the plaintiffs from the injuries they allege[d]"; (4) "would not tell the State what it needs to do in order to satisfy its trust duties and thus avoid future litigation"; and (5) "would not provide the plaintiffs any certain basis on which to determine in the future whether the State has breached its duties as trustee."[57]

Similarly, in *Sagoonick*, we upheld dismissal of claims requesting declarations that the State violated its constitutional public trust duty to protect the atmosphere through its energy policy and failure to reduce carbon emissions.[58] In that

---

[54] *See id.* at 795-99, 801-02; *Kanuk*, 335 P.3d at 1096-99, 1100-03.

[55] *Kanuk*, 335 P.3d at 1099, 1103.

[56] *Id.* at 1096, 1099, 1100.

[57] *Id.* at 1102.

[58] *Sagoonick*, 503 P.3d at 793, 799-802.

-14-                                                    7791

case the plaintiffs challenged the Alaska Department of Environmental Conservation's (ADEC's) decision rejecting a petition to adopt a rule requiring ADEC to regulate and reduce carbon emissions and to publicly and annually account for its progress.[59]  We reasoned that declaratory relief would not settle the parties' legal relations any more than in *Kanuk*.[60]

The rationale for denying declaratory relief in both *Kanuk* and *Sagoonick* is equally applicable here.  Forrer's requested declaration — that the State's management of the relevant salmon fisheries has been unconstitutional for decades — would have no immediate impact on the fisheries.  It would not compel the State to take or cease particular action.  It would not protect Forrer from the injuries alleged due to the diminished fish populations.  It would not tell the State how to fulfill its constitutional duties under the sustained yield clause.  And due to the requested declaration's lack of specificity, it would not help determine when specific future state actions violate the sustained yield clause.  Declaring that the State's overall management of the fish runs, "for decades,"[61] violated the sustained yield clause would no more settle legal relations and afford relief from uncertainty than granting the

---

[59]    *Id.* at 789-90.

[60]    *Id.* at 801.

[61]    It is likely that many of the specific actions comprising the State's management policy for the fish populations over the last six decades are no longer in force. *See Ahtna Tene Nené v. State, Dep't of Fish & Game*, 288 P.3d 452, 458 (Alaska 2012) (holding appeal moot because challenged regulation was no longer in effect).  We generally refrain from deciding moot legal issues that have lost their character as a present, live controversy or when the party bringing the action would not be entitled to relief if prevailing on the merits. *See Ulmer v. Alaska Rest. & Beverage Ass'n*, 33 P.3d 773, 776 (Alaska 2001).  We are "especially careful while reviewing requests for a declaratory judgment because those cases may easily become advisory opinions if the controversy is moot." *Ahtna Tene Nené*, 288 P.3d at 457.  Forrer's challenge to six decades of fisheries management policies presents a risk of deciding issues that are moot, which further supports the superior court's decision to dismiss his claims.

requested declarations in *Sagoonick* that the State's climate policy violated the plaintiffs' constitutional rights under article VIII or that the State "violated its public trust duty to protect Alaska's natural resources."[62]

Forrer argues that *Sagoonick* is not on point because the claims in that case were more generalized.[63] We disagree. The claims in *Sagoonick* were arguably more specific than Forrer's claims. Forrer requests "declaratory relief recognizing, and informing the defendants, that the State of Alaska has been and continues to engage in unconstitutional management of the Yukon and Kuskokwim River Chinook and Chum salmon fisheries, and has done so for decades." His complaint generally refers to mining activities in the Kuskokwim and Yukon river drainages, "industrial scale capture of pelagic fish species," "water pollution issues" accelerated by increased human habitation in these watersheds, and the State's "failure to incorporate" indigenous knowledge and history in its calculations or regulatory decisions. But the complaint does not identify specific management decisions or actions that violate the sustained yield clause.[64] In *Sagoonick*, the claims were more specific in the sense that

---

**62**     *Sagoonick*, 503 P.3d at 799.

**63**     Forrer also attempts to distinguish *Sagoonick* because it relied on different provisions of the Constitution. But the argument is not persuasive because in *Sagoonick* the claims were based on the provisions of article VIII as well as provisions of article I. *Id.* at 790-91.

**64**     Forrer argues that the superior court impermissibly "delve[d] into how much weight to give Forrer's factual allegations" by considering whether Forrer specified a particular state action or failure. When reviewing a motion to dismiss, a superior court must accept all factual allegations in the complaint as true. *ResQSoft, Inc. v. Protech Sols., Inc.*, 488 P.3d 979, 989 (Alaska 2021). The superior court order indicates that the court did accept Forrer's factual allegations, most notably that the populations of chinook and chum salmon had declined over time and that this occurred under the watch of the Board and Commissioner. But "our role in reviewing legislative decisions about management and development of natural resources is necessarily limited" to ensuring the agency took a hard look at the salient problems and engaged in

they identified a particular State action — the denial of their petition for rulemaking adopting a climate policy — as a constitutional violation.[65]

The declaratory relief that Forrer requests would be even less "clarifying" than that requested in *Kanuk* and *Sagoonick*. In *Kanuk* we held that "declaring the atmosphere to be subject to the public trust doctrine could serve to clarify the legal relations at issue" but "would certainly not 'settle' them."[66] The dissent in *Sagoonick* reasoned that declaratory judgment might at least clarify legal relations because "a balanced consideration of prudential doctrines requires that we explicitly recognize a constitutional right to a livable climate."[67] But the relief sought by Forrer would not even clarify the legal relations at issue here. There is no doubt that the State is bound to manage the fish in the Kuskokwim and Yukon rivers according to sustained yield principles.[68] The State's obligation to do so is not an open question, unlike the State's obligation to protect and preserve the atmosphere as a public trust resource in *Kanuk* and *Sagoonick*.[69] Although a claim seeking declaratory judgment that one or more specific statutes, regulations, policies, or other actions failed to follow the sustained

---

reasoned decision making. *Sagoonick*, 503 P.3d at 788, 795. Forrer's failure to identify a specific state action made it impossible for the superior court to rule on the merits of his claims.

[65] *Sagoonick*, 503 P.3d at 789-90.

[66] *Kanuk ex rel. Kanuk v. State, Dep't of Nat. Res.*, 335 P.3d 1088, 1102 (Alaska 2014).

[67] *Sagoonick*, 503 P.3d at 805 (Maassen, J., dissenting).

[68] Alaska Const. art. VIII, § 4; *West v. State, Bd. of Game*, 248 P.3d 689, 697 (Alaska 2010) (holding that sustained yield clause "requires that all wildlife . . . be managed for sustained yield").

[69] *See Kanuk*, 335 P.3d at 1091 (summarizing declarations requested); *Sagoonick*, 503 P.3d at 799 (summarizing declarations requested). While there are unanswered questions about the nature and precise scope of the sustained yield clause, the requirement that the State manage wildlife according to sustained yield principles is certain.

yield clause could sufficiently clarify the State's legal responsibilities,[70] a declaration that decades of unspecified fisheries and watershed policies violated the sustained yield clause would not have that effect.

Because Forrer's claim for declaratory relief based on the sustained yield clause does not present a justiciable "actual controversy," it was not error to dismiss the claim.[71]

## V.    CONCLUSION

For the foregoing reasons we AFFIRM the superior court's order granting the State's motion to dismiss.

---

[70]    *See, e.g.*, *Sitka Tribe of Alaska v. Alaska Dep't of Fish & Game*, 540 P.3d 893, 900-902 (Alaska 2023) (holding State did not violate sustained yield clause when it did not supply particular scientific study to Board of Fisheries in connection with Board's adoption of regulations for herring sac roe fishery).

[71]    Because we affirm dismissal of Forrer's claims on justiciability grounds, we do not address the superior court's alternate conclusion that deference to agency expertise alone warranted dismissal.